IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **BOBBY GENE WHITE,**<br><br>    Plaintiff,<br><br>v.<br><br>**DR. ABDUL JAMALUDEEN,**<br><br>    Defendant. | Case No. 1:11cv507 |

**MEMORANDUM OF LAW IN SUPPORT OF
DR. JAMALUDEEN'S MOTION TO DISMISS**

**COMES NOW** Defendant Dr. Abdul Jamaludeen ("Dr. Jamaludeen"), by counsel, and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(F) of this Court's Local Civil Rules, submits this memorandum of law in support of his motion to dismiss.

**STATEMENT OF THE CASE**

This is a civil rights lawsuit, under 42 U.S.C. § 1983, brought by Bobby Gene White, an inmate at the Virginia Beach Correctional Center ("VBCC" or "the jail"), who is proceeding *pro se*, against Dr. Jamaludeen, a physician at VBCC.  Broadly, White appears to allege that Dr. Jamaludeen denied White adequate medical care, in violation of the Eighth Amendment. Because White's complaints fail to state a claim for such a violation, however, Dr. Jamaludeen moves this Court to dismiss White's claim.

**STATEMENT OF PLAINTIFF'S ALLEGATIONS**

White initiated this action on May 11, 2011 by filing a "Complaint Under Civil Rights Act 42 U.S.C. § 1983" with this Court.  (*See generally* Compl., ECF No. 1.)  On October 3, 2011, White filed a replacement page 6 of his initial complaint to reflect a new demand for relief,

and he included additional narrative information.  (*See generally* Am. Compl., ECF No. 10.)  The Court accepted White's second filing as an amended complaint.  (*See* Order (Oct. 13, 2011), ECF No. 11.)  Accordingly, throughout this memorandum, White's filings are referred to as the Complaint and the Amended Complaint.  Together, the Complaint and the Amended Complaint allege the following.

White, a VBCC inmate, dislocated his shoulder on March 29, 2011.  (Compl. §§ III.A, IV, ECF No. 1.)  As a result, he was taken by ambulance to the hospital and was admitted on March 30, 2011.  (*Id.* § IV.)  At the hospital, White was given a "test for blood clots," which was negative.  (*Id.*)  White was discharged from the hospital "with a dislocated shoulder."  (*Id.*)  After filing several "grievances," one of which was answered in writing by a jail nurse, White received pain medication.[1]  (*Id.* § IV; Grievance Form dated April 4, 2011 (attached to Compl.), ECF No. 1-3, at 2.)  Dr. Jamaludeen, the jail physician, was waiting for medical records to arrive from the hospital before proceeding with further treatment.  (Compl. § IV.)  Ultimately, on April 18, 2011, White was sent to an "outside" medical facility for x-rays, which revealed a dislocated shoulder.  (*Id.*)  Although White wanted to have shoulder surgery, Dr. Jamaludeen "opted" for physical therapy, not surgery, at that time.  (*Id.*)  Subsequently, over a ten-day period, White attempted to see Dr. Jamaludeen, but White did not receive responses to his various "emergency grievances."[2]  (*Id.*)

Over the next several months, White received physical therapy and was treated for his physical pain with prescription medication (Vicodin), over-the-counter medication

---

[1] The Complaint does not allege that Dr. Jamaludeen had any knowledge of White's "grievances."

[2] Again, the Complaint does not allege that Dr. Jamaludeen had any knowledge of White's "grievances."

(Motrin/ibuprofen), and ice packs.  (Narrative attached to Am. Compl., ECF No. 10, at 2–3.)  On August 8, 2011, after four months' of physical therapy did not appear to heal White's shoulder, Dr. Jamaludeen sent White to an orthopedic specialist for an evaluation.  (*Id.* at 3.)  On August 18, 2011, Dr. Jamaludeen informed White that White would receive surgery for his shoulder.[3]  (*Id.* at 2–3.)  White received the surgery on September 15, 2011.  (*Id.* at 3.)  The surgery has required White to receive additional physical therapy and has caused White some pain, which has been treated with prescription pain medication.  (*Id.* at 3–4.)

In sum, with regard to Dr. Jamaludeen, White alleges that the doctor first opted to treat White with physical therapy, instead of surgery, and only later approved the surgery—a course of treatment with which White disagreed.  White also alleges that several of his "grievances" and other requests for medical treatment were ignored, but he does not allege that Dr. Jamaludeen himself had knowledge of any of the grievances or requests for treatment.  Because these allegations fail to state a claim under 42 U.S.C. § 1983, Dr. Jamaludeen requests that this Court dismiss White's action.

## **ARGUMENT**

**THE COURT SHOULD DISMISS THIS CASE BECAUSE WHITE'S COMPLAINTS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Court should dismiss this case because White's Complaint and Amended Complaint fail to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Although not stated expressly in the complaints, White appears to allege that Dr. Jamaludeen denied White

---

[3] In the Amended Complaint, White also alleges that, during his conversation with Dr. Jamaludeen on August 18, 2011, he informed the doctor that he had "put in 6 medical sick call slips to see" the doctor, all of which had, to that point, been unanswered.  (Narrative attached to Am. Compl., ECF No. 10, at 2.)  Dr. Jamaludeen replied that he had no knowledge of the "sick call slips."  (*Id.*)  White further alleges that he then received a medical appointment 30 minutes later.  (*Id.*)

adequate medical care in violation of the Eighth Amendment, as it applies to VBCC by operation of the Fourteenth Amendment. To state an Eighth Amendment claim based on inadequate medical care, however, a plaintiff-inmate must allege specific facts showing, among other things, that the defendant-physician acted with deliberate indifference to the plaintiff-inmate's serious medical condition. *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990). In this case, White's allegations that Dr. Jamaludeen treated White's shoulder injury differently than White would have liked and that White's various medical "grievances" went unanswered fail to demonstrate such deliberate indifference. Accordingly, White's case should be dismissed.

### A. The course of treatment that White alleges to have received from Dr. Jamaludeen does not demonstrate "deliberate indifference."

In his complaints, White alleges that, in response to his shoulder injury, jail officials took White to the hospital, that Dr. Jamaludeen reviewed White's case and first opted to treat White's shoulder with physical therapy, and that, after four months, Dr. Jamaludeen sent White to an orthopedic specialist and ultimately provided White with shoulder surgery. All the while, White received prescription and over-the-counter pain medication and ice packs. Thus, according to White's own allegations, Dr. Jamaludeen actively treated White's shoulder injury. Such allegations cannot constitute "deliberate indifference" on the part of Dr. Jamaludeen. *See Miltier*, 896 F.2d at 851 ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."); *see also Gonzalez-Reyna v. Ellis*, No. 1:09cv522, 2009 U.S. Dist. LEXIS 65155, at *7–8 (E.D. Va. July 27, 2009) (dismissing an inmate's § 1983 medical indifference action for failure to state a claim because the inmate's own pleadings revealed that the jail physicians had treated the inmate).

4

White does not allege that Dr. Jamaludeen failed to provide White with treatment. White's chief complaint appears to be only that he wanted surgery earlier, without first going through physical therapy. But an inmate-patient's disagreement with a physician's course of treatment—even if that course of treatment would constitute medical malpractice—does not, in itself, give rise to a constitutional violation actionable under 42 U.S.C. § 1983. *See Miltier*, 896 F.2d at 852 ("[M]ere negligence or malpractice does not violate the eighth amendment."); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review."); *see also Gonzalez-Reyna*, 2009 U.S. Dist. LEXIS 65155, at *7–8 ("The apparent fact that plaintiff disagreed with the medical staff as to many of the particulars of his treatment does not render that care actionable."). Thus, because White's allegations fail to state a claim for relief and affirmatively demonstrate that Dr. Jamaludeen's actions did not give rise to a claim under 42 U.S.C. § 1983, the Court should dismiss this case with prejudice. *See, e.g.*, *Wynn v. Smith*, No. 1:09cv639, 2009 U.S. Dist. LEXIS 65187, at *11 (E.D. Va. July 28, 2009).

### B. White's allegations regarding unanswered grievances do not state a claim against Dr. Jamaludeen.

Throughout his complaints, White alleges that he submitted various "grievances" and "sick call slips" in order to be seen by the jail's medical providers. Nowhere in the complaints, however, does White allege that Dr. Jamaludeen had any knowledge of White's grievances or requests for treatment. In fact, in his Amended Complaint, White concedes that Dr. Jamaludeen

5

stated that he had never received six of the "sick call slips."[4] Thus, White's allegations regarding unanswered grievances fail to state a claim against Dr. Jamaludeen. *See, e.g.*, *Davila v. Medina*, No. CIV S-09-1747, 2010 U.S. Dist. LEXIS 12342, at *6–7 (E.D. Cal. Feb. 12, 2010) (dismissing a case because the plaintiff-inmate did not allege that the physician had knowledge of the inmate's complaints). Moreover, even if White had alleged that Dr. Jamaludeen was aware of and ignored the grievances, a jail official's failure to comply with grievance procedures is not, in itself, actionable under 42 U.S.C. § 1983. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Garabedian v. Lanteigne*, No. 1:08cv1221, 2009 U.S. Dist. LEXIS 32374, at *7–8 (E.D. Va. Apr. 15, 2009). Thus, White's allegations fail to state a claim for relief, and the Court should dismiss this case.

## CONCLUSION

For the reasons stated above, the Court should dismiss this case, with prejudice, for failure to state a claim upon which relief can be granted.

---

[4] Moreover, White alleges that after discussing the six "slips" directly with Dr. Jamaludeen, White was given a medical appointment within 30 minutes.

6

Respectfully submitted,

DR. ABDUL JAMALUDEEN

By counsel

/s/
Kevin J. O'Brien (VSB No. 78886)
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Phone: (804) 775-1368
Fax: (804) 698-2161
Email: kobrien@mcguirewoods.com
*Counsel for Defendant Dr. Abdul Jamaludeen*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  I hereby further certify that I will mail the document by certified U.S. mail to the following non-filing user:

> Bobby Gene White
> Inmate No. 10-003521
> Virginia Beach Correctional Center
> P.O. Box 6186
> Virginia Beach, Virginia 23456
> *Pro se Plaintiff*

/s/
Kevin J. O'Brien

\35613999.1